IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

AARON OLAF ORTEGA GONZALEZ,

        Case No. 6:25-cv-00622-MC

      Plaintiff,

        OPINION AND ORDER

    v.

KRISTI NOEM, Secretary of the Department
of Homeland Security; U.S. DEPARTMENT
OF HOMELAND SECURITY; TODD LYONS,
Acting Director of Immigration and Customs
Enforcement ("ICE"); and U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT,

      Defendants.
_____

JANE DOE,

        Case No. 6:25-cv-00632-MC

      Plaintiff,

        OPINION AND ORDER

    v.

KRISTI NOEM, Secretary of the Department
of Homeland Security; U.S. DEPARTMENT
OF HOMELAND SECURITY; TODD LYONS,
Acting Director of Immigration and Customs
Enforcement ("ICE"); and U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT,

      Defendants.
_____

1 – OPINION AND ORDER

MCSHANE, Judge:

Plaintiffs Aaron Olaf Ortega Gonzalez and Jane Doe are international students pursuing graduate degrees at Oregon State University and the University of Oregon, respectively. Plaintiffs allege that Defendants Department of Homeland Security (DHS) and Immigration and Customs Enforcement (ICE) arbitrarily terminated their records in the Student Exchange Visitor Information System (SEVIS), effectively terminating their F-1 student status. Plaintiffs move for preliminary injunctions. Because Plaintiffs have shown that they are likely to suffer irreparable harm absent an injunction, Plaintiffs' motions for preliminary injunction (Case No. 6:25-cv-00622, ECF No. 19 and Case No. 6:25-cv-00632, ECF No. 16) are GRANTED.

## F-1 VISAS AND STUDENT STATUS[1]

The Immigration and Nationality Act allows noncitizens to study in the United States at government-approved academic institutions as F-1 nonimmigrant students. 8 U.S.C. § 1101(a)(15)(F); 8 C.F.R. § 214.1(a)(2). Only academic institutions that have obtained formal approval from DHS may sponsor F-1 students. *See* C.F.R. § 214.3. Each school that sponsors F-1 students has a Designated School Official (DSO) who monitors, advises, and oversees the students. Noncitizen students must apply for a F-1 visa with the United States Department of State. That visa permits entry into the country but does not govern how long a student may stay in the United States.

When students enter the country with an F-1 visa, they are granted "F-1 student status" and they are permitted to remain in the United States for the duration of status so long as they

---

[1] The following tracks, with some alterations, both the content and language of the thorough overview provided in *Madan B. K. v. Noem*, Case No: 1:25-cv-419, 2025 WL 1171572, at *5 (W.D. Mich. Apr. 23, 2025).

comply with the rules of the program. 8 C.F.R. § 214.2(f). Generally, students must maintain a full course of study and may only pursue authorized employment, often research or teaching. *Id.* "Duration of status" is defined, in general, as "the time during which an F–1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5)(i). F-1 students may participate in two kinds of practical training: Curricular Practical Training and Optional Practical Training. 8 C.F.R. § 214.2(f)(10).

The Student and Exchange Visitor Program (SEVP), part of the Department of Homeland Security (DHS), administers the F-1 student program and tracks student information. *See generally* 8 U.S.C. § 1372 (requiring program to collect information). This information is housed in the Student and Exchange Visitor Information System (SEVIS), an internet-based database.

Termination of F-1 student status in SEVIS is governed by the SEVP regulations. Students may fail to maintain status by not complying with the regulatory program requirements of 8 C.F.R. 214.2(f). DSOs at universities must report to SEVP, via SEVIS, when a student fails to maintain status. 8 C.F.R. § 214.3(g)(2).

F-1 students must also abide by the requirements for "maintenance of status" set forth in 8 C.F.R. § 214.1. This includes "obedience to all laws of United States jurisdictions which prohibit the commission of crimes of violence and for which a sentence of more than one year imprisonment may be imposed." 8 C.F.R. § 214.1(g). "A nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status." *Id.*

3 – OPINION AND ORDER

Further, an agency may terminate a student's F-1 status under 8 C.F.R. § 214.1(d), when (1) a previously granted waiver is revoked, (2) a private bill for permanent resident status is introduced, or (3) after "notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d).

## PROCEDURAL AND FACTUAL BACKGROUND

Mr. Ortega Gonzalez is a wildlife and conservation scientist who has been pursuing his Ph.D. at Oregon State University. Compl. ¶ 2, ECF No. 1 ("Ortega Gonzalez Compl.").[2] He is a Mexican citizen. *Id.* Mr. Ortega Gonzalez completed his undergraduate studies in Mexico and began working in wildlife habitat conservation. *Id.* at ¶ 29. He worked with Sul Ross State University in Alpine, Texas, and was encouraged to pursue his master's degree there. *Id.* at ¶ 30. He applied for an F-1 visa,[3] was approved, and was admitted to the United States in July 2021. *Id.* Mr. Ortega Gonzalez completed his master's in May 2024 and applied to the Ph.D. program at Oregon State University. *Id.* at ¶ 31. In August 2024, he was admitted to the United States[4] as a F-1 nonimmigrant student with OSU. *Id.* Mr. Ortega Gonzalez's doctoral research focuses on the restoration of livestock ranchlands in Oregon that have been impacted by wildfires. *Id.* at ¶ 33. Mr. Ortega Gonzalez also works as a research assistant. *Id.* at ¶ 34. This work is his sole source of income. *Id.*

---

[2] Unless otherwise specified, ECF Nos. in this Opinion & Order refer to the corresponding docket numbers in case 6:25-cv-00622-MC.

[3] In his visa application, Mr. Ortega Gonzalez disclosed that he had previously been denied entry to the United States on a tourist visa in 2014. Ortega Gonzalez Decl. ¶ 2, ECF No. 19-1.

[4] When a student completes their course of study at a university, they have sixty days to either leave the United States or transfer to another institution. If they transfer to another institution, as Mr. Ortega Gonzalez did here, they are authorized to remain in the United States for up to five months while awaiting matriculation at the new institution.

Ms. Doe is pursuing a M.S. in Conflict and Dispute Resolution and a M.A. in Journalism from the University of Oregon. Compl. ¶ 2, Case No. 6:25-cv-00632-MC, ECF No. 1 ("Doe Compl."). She is a citizen of the U.K. *Id.* ¶ 12. Ms. Doe completed her undergraduate studies in the United States, first at Brigham Young University, and then transferring to the University of Nevada Las Vegas in an effort to escape an abusive relationship. *Id.* at ¶ 30. Her previous partner followed her to Las Vegas and, at one point, he called the police to have her arrested. *Id.* Those charges were dismissed. *Id.*

Ms. Doe graduated from UNLV in June 2020. *Id.* at ¶ 31. Although she was approved for Optional Practical Training (OPT) – temporary employment available to F-1 students – she decided to return to the UK and began working as a probation officer with the Ministry of Justice. *Id.*

In 2022, Ms. Doe applied to the master's programs at the University of Oregon and, subsequently, for new student visas. *Id.* at ¶ 32. In the visa application, Ms. Doe did disclose her previous arrest, and she received a visa with no issues. *Id.* She was admitted to the United States in September 2022 to begin her studies. *Id.* at ¶ 33. Ms. Doe has worked as a journalism fellow with a local news outlet, as a tutor to student athletes, and as a teaching assistant in the Sociology Department. *Id.* at ¶ 3. She has also worked in the law library. *Id.*

Plaintiffs allege that on April 4, 2025, Defendants terminated Plaintiffs' F-1 student status in SEVIS with no notice or meaningful explanation. Ortega Gonzalez Compl. ¶ 3; Doe Compl. ¶ 4.

Mr. Ortega Gonzalez learned of the termination on April 7, 2025, when OSU's Office of International Services emailed him to tell him that his SEVIS record had been terminated. Ortega

Gonzalez Compl. ¶ 35. OSU had not been notified of the termination by Defendants – the University discovered the termination during a routine audit of the SEVP program. *Id.* The termination reason given was "individual identified in criminal records check and/or has had their VISA revoked. SEVIS record terminated." *Id.* at ¶ 36. Mr. Ortega Gonzalez has never been charged with a crime, let alone convicted. *Id.* at ¶ 37.

Ms. Doe learned of the termination on April 5, 2025, when the University of Oregon's Director of International Services emailed her to inform her that her SEVIS student status had been terminated. Doe Compl. ¶ 34. The reason given was: "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." *Id.* The University had not received any prior notice of the termination. *Id.* In the email, the University stated it was "obligated" to inform Ms. Doe that she had 15 days to leave the United States. Id. Ms. Doe has never been convicted of a crime, not even a traffic infraction. *Id.* at ¶ 35. While she was arrested previously, those charges were dismissed. *Id.*

When Plaintiffs' status was terminated, they lost their work authorization and could no longer continue their studies. Ortega Gonzalez Compl. ¶ 39; Doe Compl. ¶ 37. Mr. Ortega Gonzalez had to pause his research, causing him to miss important data collections. Ms. Doe was unable to attend a class trip to Washington D.C. that was related to her thesis about the intersection of conflict resolution and communication frameworks that enhance civic engagement. Doe Compl. ¶ 38.

Plaintiffs filed these lawsuits and moved for temporary restraining orders. On April 21, 2025, following a hearing, this Court granted the motions for temporary restraining orders,

ordering Defendants to restore Plaintiffs' SEVIS records and enjoining Defendants from
initiating removal proceedings based on that termination. Min. Proceedings, ECF No. 14.

Plaintiffs' SEVIS records were restored on April 23, 2025. Defs.' Resp. 5, ECF No. 21.
On April 25, ICE began reversing SEVIS terminations for hundreds of other similarly situated
students, due to a "policy change." *Id.*

On April 26, ICE issued a new policy providing guidance on the termination of SEVIS
records. *Id.* Per the new policy, Student Exchange and Visitor Program (SEVP) "can terminate
records for a variety of reasons, including but not limited to the following reasons:

> o Exceeded Unemployment Time
> o Failure to Comply with I-515A
> o Failure to Repay the I-901 Fee Chargeback
> o Failure to Report While on OPT
> o No Show
> o School Withdrawn
> o Violation of Change of Status Requirements
> o Change of Status Approved
> o Evidence of a Failure to Comply with the Terms of Nonimmigrant Status Exists
> o U.S. Department of State Visa Revocation (Effective Immediately)"

Defs.' Resp. Ex. A, ECF No. 21.

Because his status was restored due to the TRO, Mr. Ortega Gonzalez was able to
complete planned repairs on a damaged weather station on April 24 and 25. If he had not been
able to do this, he would have lost another week of data. Pl.'s Mot. Prelim. Inj. 4, ECF No. 19.

Ms. Doe was able to resume her studies and her work as a teaching assistant when
Defendants restored her status. However, she may not be able to graduate in June as expected
and is in the process of reworking her Master's thesis. Pl.'s Mot. Prelim. Inj. 11, Case No. 6:25-
cv-00632-MC, ECF No. 16.

Pursuant to the agreed-upon briefing schedule, Plaintiffs moved for preliminary injunctions on April 28, 2025.

## DISCUSSION

A party seeking a preliminary injunction must establish (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and that (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 374 (2008). When the government is a party, as here, the third and fourth factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The Court's decision on a motion for a preliminary injunction is not a ruling on the merits. *See Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

As a preliminary matter, Defendants argue that the Court lacks jurisdiction because the case is moot. "Circumstances have changed to forestall the preliminary relief Plaintiff seeks. ICE has already restored Plaintiff's SEVIS record. And this change is part of a larger decision by ICE to restore all recently terminated individuals' SEVIS records, including those not subject to a court order. Because Plaintiff has already received the relief he seeks, there is nothing for the Court to enjoin and Plaintiff's request is moot." Defs.' Resp. 7.

However, this case falls squarely within the voluntary cessation doctrine. "A party 'cannot automatically moot a case simply by ending its unlawful conduct once sued,' else it 'could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where [it] left off, repeating this cycle until [it] achieves all [its] unlawful ends.'" *United States v. Sanchez-Gomez*, 584 U.S. 381, 386 (2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85,

91 (2013)). Voluntary cessation moots a case only if "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992).

In response to lawsuits around the country, Defendants have changed their policy and issued new guidance regarding termination of SEVIS records. *See* Defs.' Resp. Ex. A. However, Defendants' reliance on this "new policy" does not satisfy their "heavy burden" to show mootness based on voluntary cessation. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000). As Plaintiffs argue, this new policy "is substantially the same guidance that has been in place." Pl.'s Reply 3, ECF No. 22. Nothing in the guidance prohibits the allegedly unlawful terminations. Defendants have not shown that there is no reasonable expectation that the wrong will not be repeated; rather, Defendants argue that "[w]hether ICE might . . . terminated Plaintiff's SEVIS record under this new policy presents a hypothetical dispute."[5] Defs.' Resp. 7. "A case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the offending provision." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (cleaned up).

Although voluntary cessation may not moot a case, it will affect the analysis for a preliminary injunction. *Citizens for Quality Educ. San Diego v. Barrera*, 333 F. Supp. 3d 1003,

---

[5] On May 8, Defendants filed another declaration from Andre Watson, Assistant Director of the National Security Division for Homeland Security Investigations. Second Watson Decl., ECF No. 24-1. The declaration states that "ICE has no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS record based solely on the NCIC record that led to its initial termination." *Id.* at ¶ 6. This declaration does not change the Court's analysis. The terminations were so arbitrary and capricious that the Court finds it capable of repetition.

1028 (S.D. Cal. 2018). "Even where the defendant's voluntary cessation does not moot a claim for injunctive relief, however, we consider cessation of the alleged misconduct in determining whether the plaintiff has carried his burden of demonstrating a likelihood of irreparable harm." *Lofton v. Verizon Wireless (VAW) LLC*, 586 F. App'x 420, 421 (9th Cir. 2014).

A preliminary injunction may only be granted if it is *likely* that there will be irreparable harm. *Winter*, 555 U.S. at 22 (finding the previous Ninth Circuit standard of "possibility" too lenient). This harm cannot be speculative. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016) (citing *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)). Plaintiffs must demonstrate that, in the absence of a preliminary injunction, they are likely to suffer irreparable harm before a decision on the merits could be made. *Id.* at 1023 (9th Cir. 2016) (citing *Winter*).

Plaintiffs argue that it is not speculative to consider this case in the broader context of Defendants' unceasing attempts to remove noncitizens from the country. While Defendants may have walked back the SEVIS terminations because of litigation around the country, they have not repudiated the prior decisions. Plaintiffs argue that under the "new policy," they continue to be at risk of Defendants arbitrarily terminating their student status without notice, subjecting them to irreparable harm.

The Court agrees. Deafening silence has been the only response by the Defendants in explaining, let alone justifying, the actions taken here. The termination of the Plaintiffs' SEVIS status presents as so arbitrary and capricious that the Court finds it impossible to trust that, absent an injunction, Defendants will not terminate Plaintiffs' student status yet again.

10 – OPINION AND ORDER

If their status were to be terminated again, Plaintiffs would absolutely face irreparable harm. When Mr. Ortega Gonzalez's status was terminated, he lost his work authorization and could no longer continue his research, which depends on regularly collecting data; that data is irreplaceable. Mr. Ortega Gonzalez lost his sole source of income,[6] could not continue his studies, and was "at serious risk of immediate arrest and detention for removal proceedings." Ortega Gonzalez Compl. ¶ 40. Similarly, when Ms. Doe's status was terminated, she lost her work authorization and her sole source of income. She could not continue her studies. Ms. Doe also had a limited window of time to apply for Optional Practical Training, which she could not do without an active SEVIS record. Pl's Mot. Prelim. Inj. 11, Case No: 6:25-cv-00632.

The Court's analysis of the three remaining Winter factors remains the same as in its April 23 Opinions & Orders. Op. & Order, ECF No. 18; Op. & Order, Case No. 6:25-cv-00632, ECF No. 15. Plaintiffs have a shown a likelihood of success on the merits of his Administrative Procedures Act claim (Count 2), which alleges that Defendants unlawfully terminated their F-1 student status in SEVIS.[7] On the record before the Court, where Defendants cannot explain a

---

[6] Defendants have argued that any loss of income is not irreparable harm, as Plaintiff "did represent that he's independently able to support himself in the country." Tr. 13:3-5, ECF No. 17. While it is true that a student's I-20 (Certificate of Eligibility for Nonimmigrant Student Status) must show that the student can support themselves financially, *see* 8 C.F.R. § 214.3(k), that can include, as in Mr. Ortega Gonzalez's case, tuition waivers and funding from the sponsoring institution. Ortega Gonzalez Decl. ¶ 9.

[7] Defendants argue that Plaintiffs' student status was not terminated, but that instead only their SEVIS records were terminated, citing the declaration of Andre Watson, the Assistant Director of the National Security Division for Homeland Security Investigations. Watson Decl., ECF No. 13. The Court notes that the reason given for the termination of both SEVIS records was "OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Doe Compl. ¶ 34; Second Atebe Decl. ¶ 10, ECF No. 19-4. The Court sees no other way to interpret this than as a termination of Plaintiffs' F-1 student status. Further, on this record, the Court does not see the

reason for the termination, Plaintiffs are likely to show that the termination of their F-1 student status was not in compliance with 8 C.F.R. § 214.1(d), and was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Finally, the balance of equities weighs in Plaintiffs' favor. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). The public interest also weighs in favor of allowing Mr. Ortega Gonzalez to continue his research on restoration of Oregon rangelands affected by wildfires and Ms. Doe to continue her studies to promote civic engagement, community dialogue, and social cohesion.

Defendants argue that an injunction would unduly burden the public, as the Executive Branch holds the power to administer and enforce immigration laws. Defs.' Resp. 9. However, the Court's injunction should not interfere with Defendants' ability to pursue lawful immigration enforcement actions. *See Castillo v. Barr*, 449 F. Supp. 3d 915, 923 (C.D. Cal. 2020) ("there is

---

distinction between termination of the SEVIS record and termination of the student status. DHS's own website notes:

> When an F-1/M-1 SEVIS record is terminated, the following happens:
>> Student loses all on- and/or off-campus employment authorization.
>> Student cannot re-enter the United States on the terminated SEVIS record.
>> Immigration and Customs Enforcement (ICE) agents may investigate to confirm the departure of the student.
>> Any associated F-2 or M-2 dependent records are terminated.

https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student; *accord* Second Atebe Decl. ¶ 18 ("It is and has always been the understanding of OSU that all F-1 international students must have an active SEVIS record to remain in valid F-1 status."), ¶ 20 ("Even prior to the March and April 2025 SEVIS terminations, it has always been clear that once an F-1 student's record in SEVIS is terminated, regardless of the reason, that student immediately loses all on- and off-campus employment authorization based on their F-1 nonimmigrant status.").

no harm to the Government when a court prevents the Government from engaging in unlawful practices.").

Finally, the Court waives the bond requirement of Rule 65. *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiffs' Motions for Preliminary Injunction (Case No. 6:25-cv-00622-MC, ECF No. 19 and Case No. 6:25-cv-00632-MC, ECF No. 16) are GRANTED.

Defendants shall set aside and refrain from enforcing the April 2025 termination determination provided via the Student and Exchange Visitor Information System (SEVIS).

Defendants shall restore and maintain Plaintiffs' SEVIS record for the duration of the litigation absent Defendants' becoming aware of a newly discovered independent legal ground allowing removability.

Defendants shall provide notice to Plaintiffs and this Court of an intent to terminate Plaintiffs' SEVIS status 15 days prior to such termination.


IT IS SO ORDERED.

DATED this 9th day of May, 2025.


<u>/s/ Michael McShane</u>
Michael McShane
United States District Judge


13 – OPINION AND ORDER